# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

|  |  |
|---|---|
| **MICHAEL L. MARTIN,** ) | |
| ) | |
| Petitioner, ) | Case No. 7:19CV00854 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **HAROLD CLARKE, DIRECTOR,** ) | By: James P. Jones |
| ) | United States District Judge |
| Respondent. ) | |
| ) | |

*Michael L. Martin, Pro Se Petitioner; Robert H. Anderson, III, Assistant Attorney General,* OFFICE OF THE ATTORNEY GENERAL, *Richmond, Virginia, for the Respondent.*

In this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, petitioner Michael L. Martin, a Virginia inmate proceeding pro se, contends that his confinement pursuant to a 2017 judgment entered by the Circuit Court for Pittsylvania County is unconstitutional. Upon review of the record, I conclude that the respondent's Motion to Dismiss must be granted.

I. BACKGROUND.

Briefly stated, Martin claims that his trial attorney provided ineffective assistance by failing to move for suppression of certain evidence, based on alleged

Fourth Amendment violations. The Supreme Court of Virginia found the following facts during Martin's state court habeas corpus proceedings:[1]

> The record, including the affidavit in support of the search warrant, the search warrant, the inventory and return for the search warrant, and the police investigative reports attached to the petition . . ., demonstrates that on July 2, 2015, [Rynesha] Greene reported to Danville police that [Martin] had assaulted her twice within recent days at her apartment on North Hills Court in Danville. Greene reported that [Martin] lived with her and that [he], a convicted felon, had several weapons, counterfeit money, and other contraband, including items from recent vehicle thefts in "the area and also in the county," in her apartment. Greene reported she was afraid of [Martin] and that he was forcing her to commit crimes with him. She reported [he] was breaking into cars and stealing items, using stolen credit cards to purchase items, and producing counterfeit currency. She also identified herself and [Martin] in photographs from a surveillance video, which showed them leaving a Wal-Mart after using a stolen credit card to make purchases.
>
> Greene consented to a search of her apartment and signed a consent form, but Corporal R. E. Chivvis, of the Danville Police Department, obtained a search warrant anyway. The affidavit for the warrant was signed by Chivvis and witnessed by Magistrate Lauren M. Clifford at 5:05 p.m. on July 2, 2015, and the warrant was signed by Clifford at 5:10 p.m. Corporal Chivvis and Investigator A. Rouse, of the Pittsylvania County Sheriff's Office, both reported that after the search warrant was obtained, a SWAT team secured the apartment and the search warrant was executed. Investigator V. M. Jennings, of the Danville Police Department, reported that at approximately 5:29 p.m. on July 2, 2015, he assisted Chivvis, Rouse, and other officers in executing the search warrant that Chivvis had obtained. Chivvis, however, noted on the inventory and return for the search warrant that the warrant had been executed at 5:00 p.m. on July 2, 2015. He also noted on some individual evidence tags that the evidence had been collected at 5:00 p.m.

---

[1] Factual determinations made by the state court are "presumed to be correct," and the petitioner has the burden of rebutting that presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Pet. Ex. 98–99, ECF 1-1.

Based upon evidence obtained from Greene, the search on July 2, 2015, and subsequent investigation, a Pittsylvania grand jury returned indictments on August 17, 2015, charging that on or about June 4, 2015, Martin had committed two counts of grand larceny by taking property items worth more that $200 from vehicles belonging to two different individuals in that jurisdiction. This investigation also triggered similar criminal charges against Martin in other Virginia jurisdictions, including Danville and Martinsville,[2] and in the Danville division of this court.

The first attorney appointed to represent Martin in the Martinsville criminal charges was a public defender named Andrew Hynes. On February 12, 2016, Hynes filed a motion seeking to suppress certain evidence. Based on conflicting times listed on various documents and evidence tags, Hynes argued that officers conducted the search on July 2, 2015, without having a search warrant in hand.[3] *Id*. at 83–84, ECF No. 1-2. This motion led Martin to believe that constitutional challenges to that search were important to his fight against all of the charges, to prevent officials

---

[2] Martin's § 2254 petition challenging his convictions in the Circuit Court for the City of Martinsville is pending in a separate civil action in this court, *Martin v. Clarke*, No. 7:19CV00853.

[3] The sequence of events relevant to Martin's claims is taken from his habeas submissions and the records of the Circuit Court for Pittsylvania County, the Court of Appeals of Virginia, and the Supreme Court of Virginia, as well as the record of his federal criminal case, No. 4:16CR00005.

from producing tangible evidence of the property items that he was accused of stealing. Martin became dissatisfied with Hynes' representation and filed a bar complaint against him, after which Hynes withdrew without arguing his suppression motion. But thereafter, Martin pressured every attorney appointed to him to focus on suppression issues, contending that without the evidence seized during the July 2, 2015, search, the serious charges against him would be dismissed without trial.

In September and October of 2016, attorney Elmer Woodard was appointed to represent Martin on his Pittsylvania and Martinsville charges. Martin submits a copy of a letter he wrote to Woodard, dated October 10, 2016, instructing the attorney to move to suppress evidence from the Danville search. The letter advised Woodard that in support of such a motion, Martin had obtained discovery information reflecting that in "the affidavit used to get the warrant Officer Chivvis made conclusory statements, left out times, made false statements, the information is not detailed enough, [and] the warrant is overbroad." *Id*. at 54. Martin advised Woodard, "I made a copy for you and kept the original." *Id.* Martin asserts in his affidavit that he told Woodard in October 2016, to file a motion for a "*Franks* hearing."[4] Pet., Martin Aff., at 82–83, ECF No. 1-2.

---

[4] In *Franks,* the Supreme Court held that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly

Woodard advised Martin, however, that he saw no constitutional errors in the Danville search that were relevant to the Pittsylvania case. He advised that it would be in Martin's "best interest to plea to the two counts of grand larceny" there. *Id.* at 86. Woodard refused to obtain additional documents that Martin sought in support of a *Franks* hearing or suppression of evidence. These disagreements between client and attorney provoked Martin to strike Woodard with his briefcase and to tell the court that Woodard was lying when he said he had done everything his client asked him to do. *See, e.g.*, *id.* at 87.

In late November 2016, Martin informed the Pittsylvania court that he had terminated Woodard's representation, because the attorney-client relationship was irretrievably broken. After conducting a hearing on December 6, 2016, the court denied Martin's motion and indicated that Woodard had not moved to withdraw and would continue as Martin's attorney.

Martin's case came on for trial in the Pittsylvania court on December 8, 2016. After a jury panel was selected and sworn, Martin declared his intention to enter an *Alford* plea of guilty.[5] The court conducted a plea colloquy. The prosecution

---

      false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

438 U.S. 154, 155–56 (1978).

   [5] *North Carolina v. Alford*, 400 U.S. 25, 38 (1970) ("In view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter

produced a written summary of the evidence. On the night of June 2 and 3, 2015, someone entered Vance Kiser's unlocked pickup and removed numerous items of personal property, credit cards, and cash, belonging to Kiser and his wife, valued at $1,806. Investigators obtained surveillance camera footage from two different Wal-Mart stores, showing a black male and female using the Kisers's credit cards to make purchases in the early morning hours of June 3, 2015. On June 4, 2015, Lieutenant J. T. Barrett noticed that someone had broken into his pickup truck at his home in Pittsylvania County and that several tools, valued at $393.89, were missing from inside the truck. Some of Barrett's missing tools were among the stolen property items recovered during the search on July 2, 2015. Greene would have testified that Martin forced her to steal items from these victims' vehicles and forced her to use the stolen credit cards at Wal-Mart. The court determined that Martin was voluntarily entering his *Alford* plea, that it had adequate factual support, and that he was guilty of the two offenses charged.

The court sentenced Martin to two ten-year terms of imprisonment, with fourteen years suspended. Martin's direct appeal to the Court of Appeals of Virginia was refused on December 13, 2017. Martin did not pursue a subsequent appeal to the Supreme Court of Virginia.

---

it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it.").

Meanwhile, on April 15, 2016, a federal grand jury in Danville returned an Indictment charging Martin with possession of several firearms as a convicted felon and possession of counterfeit money. That case was continued numerous times. On January 29, 2018, Martin's first trial attorney in the federal case, Randy Cargill, filed a Motion to Withdraw as Martin's counsel. Cargill indicated that Martin wanted him to file a Motion to Suppress regarding the evidence seized on July 2, 2015, based on the timing discrepancies in the record as to when the warrants issued and when they were executed. Cargill stated that he could not, in good faith and based on his understanding of the law, argue for suppression of the evidence as Martin was asking him to do. Attached to the motion were copies of the arrest warrant, the search warrant, and several evidence tags. The district judge granted Cargill's motion and appointed new counsel for Martin.

Martin's second attorney in the federal case, Malcolm Doubles, reviewed extensive discovery documents with Martin. Doubles prepared a motion seeking a *Franks* hearing by attempting to show that Chivvis included false information in the affidavit supporting the search warrant request, possibly with an intention to mislead the magistrate.[6] No *Franks* hearing was held, however. Ultimately, after Martin's

---

[6] This motion argued that the affidavit was misleading because Chivvis never identified that he, personally, did not speak to Greene; the affidavit relates ambiguous, conclusory statements from Greene; Chivvis stated that Greene identified Martin and herself in surveillance *video* footage of two fraudulent credit card users at Wal-Mart, although Greene was actually shown still photographs taken from such footage; conclusory

case was assigned to a different prosecutor, the United States moved for, and the court granted, dismissal of the federal charges without prejudice on July 12, 2018.

Martin states that he made unsuccessful efforts to obtain copies of discovery and other file-related documents from Woodard. Finally, Martin filed a complaint against Woodard with the state bar. In September 2018, the state bar directed Woodard to provide Martin a copy of his full file, and he did so.

Instead, on February 7, 2019, Martin executed a state habeas corpus petition that he then filed in the Supreme Court of Virginia, Record No. 190197, raising essentially the same claims that he presents in his federal petition.[7] In a detailed

---

statements in the affidavit (that Martin is a convicted felon and that he and Greene matched the descriptions of the credit card fraud suspects) are not credited to Greene or Chivvis; the affidavit did not include an attached sheet, although the form indicated that it should; and the suspected offenses did not include any mention of counterfeit currency, but the warrant listed counterfeit currency as a type of contraband for which officials were authorized to search.

[7] As interpreted by the Supreme Court of Virginia, Martin's three-claim habeas petition raised the sub-claims that as counsel, Woodard was ineffective for failing to raise the following supportive arguments: the time of the search of Greene's apartment preceded the time the magistrate executed the search warrant; when seeking entry to search, police falsely advised Martin that they had a warrant and would kick down the door if he did not admit them; although Greene had consented to a police search of the apartment, officers forgot to bring the key Greene had provided; the affidavit in support of the search warrant contained conclusory statements and omitted the times when the alleged crimes were committed, making the affidavit insufficient to provide probable cause; the search warrant was overbroad because it authorized officers to search for items unrelated to the offenses it enumerated; some items seized, such as a toolbox, were outside the scope of the search warrant and were not obviously contraband; the inventory and return for the search warrant included bags and/or boxes of credit cards, computers, tools, and jewelry, instead of providing a description of each individual item seized; the affidavit made misleading statements about the requesting officer's personal knowledge of events, about the part of the surveillance video officers showed to Greene, and about the veracity of Greene's

Order, the Supreme Court of Virginia refused Martin's petition on November 21, 2019.

On December 11, 2019, Martin executed this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Liberally construed, his petition alleges the following grounds for relief:

(1) Trial counsel provided ineffective assistance by inadequately investigating the truthfulness of the affidavit used to obtain a search warrant executed by the Danville Police Department;

(2) Trial counsel provided ineffective assistance by not timely requesting a hearing pursuant to *Franks*, and not moving to suppress certain evidence; and

(3) As a result of the ineffective assistance in claims (1) and (2), counsel had a conflict of interest.

*See* Pet. Mem. 1, 24, 61, ECF No. 1-2. The respondent has filed a Motion to Dismiss and a Response, arguing that Martin's claims were untimely filed and are without merit. Martin has responded to the respondent's filings, making these matters ripe for disposition.

## II. DISCUSSION.

The one-year period of limitation for filing a habeas petition under § 2254 begins to run on the latest of four dates:

---

description of Martin's crimes and their timing; and Woodard had a conflict of interest with Martin, as evidenced by Woodard's failure to file motions about the alleged defects in the search and seizure and by Martin's VSB complaint against Woodard.

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  The federal filing period is tolled, or stopped, during the time when a properly filed state post-conviction proceeding is pending.  *See* 28 U.S.C. § 2244(d)(2).

I conclude that Martin's petition was untimely filed under § 2244(d)(1)(A).  After the Court of Appeals of Virginia refused Martin's appeal petition on December 13, 2017, Martin had thirty days to appeal to the Supreme Court of Virginia.  Va. Sup. Ct. Rule 5:14(a).  When he failed to do so by January 12, 2018, his convictions became final, and his federal habeas time clock under § 2244(d)(1)(A) began to run.  *See Gonzales v. Thaler*, 565 U.S. 134, 149–50 (2012) (holding that when state prisoner does not seek appellate review, judgment becomes final when time for seeking direct review expires); Va. Code Ann. § 1-210(c) (extending time to file

action to next court business day when filing period ends on weekend or holiday). Martin's one-year federal filing period expired on January 12, 2019.

On February 7, 2019, at the earliest, Martin executed and thereafter filed a state habeas corpus petition in the Supreme Court of Virginia. Because Martin filed this petition after the federal filing period had expired, however, its pendency did not toll the filing period under § 2244(d)(2). Thus, I must dismiss Martin's § 2254 petition as untimely under § 2244(d)(1)(A), unless he demonstrates a factual basis on which to invoke another provision of § 2244(d)(1), or to warrant equitable tolling.

Martin argues that his petition is timely filed under § 2244(d)(1)(D), based on when he first discovered the factual basis for his claims. He asserts that in March of 2018, Malcolm Doubles, the second attorney to represent him on the federal charges, provided him his first complete set of discovery documents, related to the search warrant and its execution on July 2, 2015. Because he thus obtained all documents related to his claims around March 1, 2018, Martin asserts that the one-year limitation period under § 2244(d)(1)(D) should be calculated beginning on that date. He is mistaken.

Section 2244(d)(1)(D) provides that the statutory filing period can be triggered on the date when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Martin tries to argue that he only discovered his current claims in

March 2018, when he obtained a full set of discovery documents. Possession of all desired documentation to support a claim, however, is not the trigger for application of § 2244(d)(1)(D). Rather, this provision centers on the date when Martin, with due diligence, *could have* discovered the facts on which the claims themselves are based. "Even after a prisoner has requested that his attorney take a certain action, a prisoner still must exercise due diligence himself." *Gray v. Ballard*, 848 F.3d 318, 323 (4th Cir. 2017). Thus, if the prisoner received information suggesting his habeas claim prior to his trial, he had the opportunity to investigate earlier other facts relevant to that claim and cannot invoke his belated discovery of such facts as the trigger for calculation of his habeas filing period under § 2244(d)(1)(D). *Id.*

Clearly, Martin knew during his state court trial proceedings that he had personal conflicts with his attorneys. His submissions also clearly reflect that before his plea hearing, by October of 2016 or earlier, he had knowledge of some grounds for challenging the validity of the July 2015 search warrant and the search itself. Thus, he knew of and could have investigated and raised his claims of ineffective assistance concerning the Fourth Amendment search issues and the conflict of interest issue well before February 2019, when he filed his state habeas petition. On the record, I cannot find that Martin's filing date under § 2244(d)(1)(D) would be any later than his filing date under § 2244(d)(1)(A). Moreover, Martin does not allege any facts suggesting that he is entitled to statutory tolling of the limitations

period under § 2244(d)(1)(B) (state-imposed impediment to filing) or § 2244(d)(1)(c) (right newly recognized and applied retroactively), and I find no factual basis for tolling under these subsections.

An inmate's § 2254 filing may warrant *equitable* tolling of the statute of limitations only when he demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010).[8] Equitable tolling is appropriate in those "rare instances where — due to circumstances external to the party's own conduct — it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc).

Martin argues that he is entitled to equitable tolling of the habeas filing period because he was misled by a prison-provided packet of information about habeas proceedings. *See* Aff./Reply to Resp't Br. Attach. 7–13, ECF No. 18-1. Martin focuses on Footnote 3 of the packet, which states, in part:

> If no direct appeal was filed, the one-year statute of limitation begins running 30 days after the judgment of conviction was entered. If a direct appeal was filed, the one-year statute of limitation begins to run on the expiration of the 90-day period "within which [a petitioner] could have filed a petition for a writ of certiorari from the United States Supreme Court" following direct appeal, whether or not one was filed.

---

[8] I have omitted internal quotation marks, alterations, and citations here and throughout this Opinion, unless otherwise noted.

*Id.* at 8 n.3.  Martin argues that this footnote misled him to believe that the ninety-day period for seeking certiorari review applied, starting from the date that the Court of Appeals of Virginia refused his direct appeal, which if applicable, would have rendered the present action timely under § 2244(d)(1).

This footnote, however, did not describe Martin's situation.  Rule 13 of the Rules of the United States Supreme Court expressly states that "[a] petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order *denying* discretionary review." U.S. Sup. Ct. R. 13(1) (emphasis added).  Martin did not take a second-tier appeal from the decision by the Court of Appeals of Virginia to the Supreme Court of Virginia.  Thus, the timing portrayed in the packet's footnote could not apply directly to his circumstances in calculating when his statutory habeas filing period would expire.

Moreover, the habeas packet expressly warned a reader to do his own research or consult an attorney for legal advice about habeas matters.  It states, "To determine the date your statue began running, *consult the text* of 28 U.S.C. § 2244(d)(1). Aff./Reply Resp't Attach. 8 (emphasis added).  The final two paragraphs of the packet state:

> Case law interpreting the habeas corpus statute is also constantly changing. The foregoing is not intended to be exhaustive recitation of the law governing habeas corpus, but it is a starting point. It should not be construed as legal advice.

> It is best to consult an attorney to determine whether any subsequent changes to the law have occurred. It is also best to consult an attorney for help in the preparation and pursuit of your federal habeas corpus petition. The River North Law Library strongly recommends that you submit a request to speak with the institutional attorney prior to beginning any post-conviction litigation.

*Id.* at 13.

Essentially, Martin's reliance on the habeas packet is a claim that the habeas filing period should be equitably tolled, based on his own ignorance of the law and his reliance, to his detriment, on legal materials provided to him by the prison's law library. This argument fails on the facts and the law. Martin's own lack of legal acumen and resources is not a factor not external to him. Indeed, the packet advised him to seek counsel and read the habeas statutes, rather than relying solely on the packet. "[E]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (citing *Cross-Bey v. Gammon*, 322 F.3d 1012, 1015 (8th Cir. 2003) ("[E]ven in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted."); *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002) ("[A] petitioner's own ignorance or mistake does not warrant equitable tolling. . . ."); *Delaney v. Matesanz*, 264 F.3d 7, 15 (1st Cir. 2001) (rejecting the argument that a pro se prisoner's ignorance of the law warranted equitable tolling); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (same).

Stated differently, it is not extraordinary for a prisoner to be ignorant of the law and to lack legal resources. As such, Martin is not entitled to equitable tolling of the statute of limitations because he mistakenly believed he had a longer time period to file his § 2254 petition.

In rare circumstances, a habeas litigant can avoid the time bar and have his federal claims considered on the merits if he can show that failure to consider his habeas claims will result in a miscarriage of justice because he is actually innocent. *McQuiggin v. Perkins*, 569 U.S. 383, 393–94 (2013). "The miscarriage of justice exception [to the federal statute of limitations for filing a habeas petition] applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Id.* at 394–95 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Martin fails to point to any new evidence supporting any colorable claim that he is actually innocent of the offenses for which he stands convicted, and I find no support in the record for such a finding.[9] Thus, the miscarriage of justice exception cannot excuse Martin's untimeliness.

---

[9] Martin repeatedly asserts his innocence, but he does not present any new evidence that would make it more likely than not that no reasonable juror would find him guilty of the charged offenses. Moreover, even if Martin had succeeded in suppressing the items recovered during the search, the Commonwealth could have presented testimony from Greene and from the victims, Kiser and Barrett, about the offense conduct and missing property items. Thus, I cannot find that Martin has made a colorable showing of actual innocence to warrant equitable tolling.

III.  C<span>ONCLUSION</span>.

For the stated reasons, I conclude that Martin's federal petition was not timely filed under any subsection of § 2244(d)(1) and that he has not established any ground for equitable tolling. Therefore, I will grant the Motion to Dismiss.

A separate Final Order will be entered herewith.

DATED: September 1, 2020

/s/  J<span>AMES</span> P. J<span>ONES</span>
United States District Judge

---

Furthermore, even if Martin had timely filed his § 2254 petition, I could not grant habeas relief here. Simply stated, I cannot find that the Supreme Court of Virginia's rulings on his habeas claims represent unreasonable applications of established federal law or that they were based on an unreasonable determination of facts. *See* 28 U.S.C. § 2254(d). For the reasons stated by the Supreme Court of Virginia, I also conclude that Martin has not presented facts showing (a) that counsel provided deficient representation when concluding that the Fourth Amendment motions Martin demanded were not part of an effective trial strategy in the Pittsylvania case, or (b) that pursuing such motions would have created a reasonable probability of a different outcome in the trial. *See Strickland v. Washington*, 466 U.S. 668 (1984) (requiring such showings for successful federal habeas claims of ineffective assistance of counsel).